UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CR-20348-MORENO

UNITED STATES OF AMERICA,

vs.

IRVIN FERNANDO SIORDIA
_____/

## MEMORANDUM IN AID OF SENTENCING AND
## MOTION FOR DOWNWARD VARIANCE

Irvin Siordia files this memorandum in aid of sentencing and moves the Court for a downward variance.

## INTRODUCTION

We are hopeful that this memorandum, the letters of support, and the presentation at sentencing will demonstrate to this Court that a downward variance from the applicable guideline range (51-63 months) is appropriate. We believe that a sentence of 24 months of imprisonment is the appropriate sentence in this case.

There are very strong reasons for this Court to issue a downward variance:

First, he is a minor player in this drug scheme (in fact, it appears that he is the least culpable participant). Importantly, he was not paid for his involvement in this scheme. In related cases, more culpable defendants have been sentenced to 36 months.

Second, Mr. Siordia is a loving father to five young children; he does his best for his family and helps to support his siblings and parents.

Third, he is going to be deported after he serves his sentence here even though he has

lived almost his entire life here and has a family here. He is a Development, Relief, and Education for Alien Minors Act ("DREAMER") who was brought to the United States from Mexico by his family as a child, and who will now be deported and separated from his own children. *See United States v. Hercules*, 2020 WL 103269 (1st Cir. Jan. 9, 2020) (district court has discretion to weigh possibility of future deportation when mulling sentencing factors).

Fourth, he is a first-time, non-violent offender, who presents little risk to re-offend. Other background facts tell a sad story: he is a victim of statutory rape, which yielded a child and consequently resulted in Mr. Siordia dropping out of high school at 15 years old to care for his infant daughter.

Finally, and significantly, Mr. Siordia has expressed extreme remorse and a desire to change his life by cooperating with the Government to further ongoing investigations.

## SECTION 3553(a) FACTORS APPLIED TO THIS CASE

### a)   The History and Characteristics of Irvin Siordia

Mr. Siordia's history and characteristics are unique, compelling, and merit a downward variance. While the Guidelines mechanize a sentence based upon drug quantity, they give virtually no weight to the history and characteristics of the defendant, which Congress has instructed the sentencing court to consider, equally, with the nature and circumstances of the offense. *See Rita v. United States*, 551 U.S. 338, 364-65 (2007) (The Commission has not developed any standards or recommendations that affect sentencing ranges for many individual characteristics. Matters such as age, education, mental or emotional condition, medical condition (including drug or alcohol addiction), employment history, lack of guidance as a youth, family ties, or military, civil, charitable, or public service

are not ordinarily considered under the Guidelines. These are, however, matters that 3553(a) authorizes the sentencing judge to consider and weigh. *See also United States v. Prosperi*, 686 F.3d 32, 39 & 45 (1st Cir. 2012) (affirming downward variance from 87-108 months to 6 months of home detention because the loss numbers did not take into account the personal characteristics of the defendant). With the preceding in mind, we ask this Court to apply fair and due consideration to the characteristics and specifics of Mr. Siordia's case that support the instant Motion for Downward Variance. Mr. Siordia is a first time, non-violent offender. He is 29 and a loving father to five young children, the youngest of whom he has reared since age 15. In addition to supporting all his children, Mr. Siordia also helps support his mother and father. He has shown unequivocal commitment to acceptance of responsibility and rehabilitation, in large part through cooperation.

      The nature and character of Mr. Siordia is well articulated in the attached letters of support sent by his family. The sentiment in these letters is consistent and strong: Mr. Siordia is a loving father who cares first and foremost for his family. Those original letters are affixed hereto as "Attachment 1."

      Mr. Siordia was raised in a low-income, inner-city neighborhood in the south side of Chicago. Although from very humble roots, Mr. Siordia reports a loving childhood absent physical or emotional abuse by his family. Mr. Siordia's parents brought him to the U.S. as a small child. Although Mexican by nationality, Mr. Siordia speaks little Spanish and is otherwise a first-generation American. However, because his parents never took steps to give Mr. Siordia legal status, he is a deportable alien that will be removed upon the conclusion of his sentence in this case.

Although surrounded by gang activity, Mr. Siordia himself resisted the lifestyle and culture and only broke from his schooling due to a significant change in circumstances—he was raped by a 22-year old woman at the age of 14. When his daughter was born at 15, Mr. Siordia had no family help to care for the child and was left with the decision of either caring for his daughter himself or terminating his parental rights. Accordingly, Mr. Siordia became a stay-at-home dad at 15. For two years he was a full-time parent raising his daughter as best he could.

At 17, Mr. Siordia obtained his first job as a maintenance worker; a job he held until the day of his arrest. Confronted with the reality of being an adult before even having the right to vote, Mr. Siordia heard the call of responsibility and he answered. Mr. Siordia has never lost a job and has never neglected his children.

As a father, Mr. Siordia shares equal caregiving responsibilities for his children and is an equal financial provider. He sees them on a daily basis, and they maintain a deeply loving and nourishing relationship.

Regarding medical concerns, Mr. Siordia has had his fair share while at FDC Miami. Since his arrest, Mr. Siordia has contracted scabies, twice, from soiled linens and clothes. Perhaps more disturbing still, for treatment of a cracked tooth, Mr. Siordia was told that until the tooth or gum is infected and has puss forming, there would be no treatment. Anyone who has ever had a tooth ache knows that it can be one of the most agonizing and uncomfortable types of pain. Due to the lack of medical care, Mr. Siordia can only chew with one side of his mouth.

Circuit Courts of Appeal have upheld downward variances based upon a defendant's

role as a caregiver. *See Prosperi*, 686 F.3d at 48 (affirming large variance when district court recognize[d] that [the defendants] both play important roles as care givers and caretakers in their families.); *United States v. Munoz-Nava*, 524 F.3d 1137 (10th Cir. 2008) (sentence of one year and one day for a man who possessed with intent to distribute 100 grams of heroin, despite a guideline range of 46-57 months, based on his long work career, community support, lack of a criminal record, and responsibilities as sole supporter of 8-year-old son and elderly parents, which reduced the likelihood he would re-offend); *United States v. Taylor*, 280 Fed. Appx. 397 (5th Cir. 2008) (unpub) (60 month prison term for trading child porn was not plain error, despite a guideline sentence of 120 months, based on defendant's lack of a prior record, his youth and impressive employment history, supportive testimony of his wife, mother, and step-father, and the needs of his newborn son); *United States v. Dominguez*, 296 F.3d 192 (3d Cir. 2002) (district court erred in concluding it could not depart four levels in bank fraud case for defendant who resided with elderly parents, who were physically and financially dependent on her); *United States. v. Prisel*, 316 Fed.Appx. 377 (6th Cir. 2008) (unpub) (sentence of one day in prison plus three years supervised release for possessing child porn upheld despite guideline range of 27-33 months, where defendant worked from home, and had a dependent wife with whom he had a mortgage for which they jointly owed over $70,000).

In a recent decision out of the First Circuit authored by Judge Selya, the circuit court upheld the district court's authority to consider a defendant's future deportation as a basis to vary under §3553(a). *See United States v. Hercules*, 2020 WL 103269 (1st Cir. Jan. 9, 2020).

The facts and circumstances of Mr. Siordia's history and characteristics demonstrate conclusion that such a departure is entirely warranted.

### b) The Nature and Circumstances of the Offense

We next ask this Court to consider Mr. Siordia's minor role within the nature and circumstances of the offense in our request for a downward variance. As reflected by the minor role stipulation, it is undisputed that Mr. Siordia is substantially less culpable than the average participant in this conspiracy. He did not exert any influence or authority over any aspect of the conspiracy; he had no function within the conspiracy; he was not offered, nor did he receive any remuneration for his involvement in this conspiracy; and he gave a voluntary *Mirandized* statement accepting responsibility at the time of his arrest.

As to actual involvement, as articulated in his Factual Proffer [D.E. 57], Mr. Siordia accompanied his brother-in-law Alvarez to Florida because he knew Alvarez was being held responsible for the theft of $1.9 million dollars—the motivation in this case was for Siordia to help remove his family member from the threat of harm. Once in Florida, Mr. Siordia blindly followed the lead of his brother-in-law. Mr. Siordia did not know the co-conspirators in Miami, nor did he have an independent relationship with any of them.

### c) Cooperation

Mr. Siordia is extremely remorseful, desirous of making amends in his life, and to that end has accepted responsibility since the moment of his arrest. Once detained, Mr. Siordia took the next step on his road to rehabilitation and decided to cooperate with the government. Mr. Siordia has debriefed twice and was candid with investigators, revealing additional information that was previously unknown.

Although the Government is the only party that can file a motion pursuant to §5K1.1, the Court is free to issue a variance based on a defendant's extreme remorse, acceptance of

responsibility, and cooperation. *United States v. Knox*, 573 F.3d 441 (7th Cir. 2009) (holding that as a general matter a district court may consider a defendant's cooperation with the government as a basis for a reduced sentence, even if the government has not made a §5K1.1 motion); *United States v. Martinez-Munguia*, 268 Fed. Appx. 472, at *1 (7th Cir. 2008) (unpublished opinion) (holding that the district court judge properly understood his discretion to reduce the defendant's sentence due to substantial cooperation in the absence of a §5K1.1 motion from the prosecutors, though he elected not to grant such a reduction); *United States v. Fernandez*, 443 F.3d 19, 33 (2d Cir. 2006) (finding that a district court should consider the contention that a defendant made efforts to cooperate, even if those efforts did not yield a Government motion for a downward departure pursuant to U.S.S.G. §5K1.1"); *United States v. Laufle*, 433 F.3d 981, 987 (7th Cir. 2006) ("Departures aside, the nature and degree of [a defendant's] assistance to the government is of course a relevant sentencing factor…"); *United States v. Doe*, 398 F.3d 1254, 1260-61 (10th Cir. 2005) (concluding that a defendant's assistance should be fully considered by a district court at sentencing even if that assistance is not presented to the court in the form of a §5K1.1 motion); *United States v. Bullock*, 2009 WL 3667094, *3 (E.D. Wis. 2009) (district court acknowledges that it can consider attempts at cooperation under 3553(a) even if the government does not file a §5K1.1).

Additionally, the Supreme Court has explained that evidence of post-offense rehabilitation is relevant under the 3553 factors. *Pepper v. United States*, 131 S.Ct. 1229 (2011) (explaining that a district court may consider a defendant's attempts at rehabilitation even after sentencing and that no limitation be placed on the types of information a judge should consider about the background, character and conduct of the defendant).

## CONCLUSION

WHEREFORE undersigned counsel respectfully requests this Court to issue a 24-month sentence in this case.

      Respectfully submitted,

**MARKUS/MOSS** PLLC
40 N.W. Third Street
Penthouse One
Miami, Florida 33128
(305) 379-6667
markuslaw.com

By:   /s/ David Oscar Markus
      DAVID OSCAR MARKUS
      Florida Bar Number 119318
      dmarkus@markuslaw.com

      /s/ Todd Yoder
      TODD YODER
      Florida Bar Number 71263
      tyoder@markuslaw.com